**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jennie-O Turkey Store, Inc., et al., | Civil No. 07-cv-1605 (JNE/JJG) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Food Movers International, Inc., | |
| Defendant. | |

This matter is before the Court on the Defendant's Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) (Doc No. 3).[1] Defendant Food Movers International, Inc. ("FMI") contends that it lacks sufficient contacts with Minnesota to allow the Court's exercise of personal jurisdiction over it consistent with due process. FMI's motion has been referred to this Court pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1 (Doc. No. 6). For the reasons set forth below, the Court recommends that FMI's motion be granted and that this case be dismissed without prejudice based on lack of personal jurisdiction.

**I.   BACKGROUND**

This is a breach of contract action brought by Jennie-O Turkey Store, Inc. and Jennie-O Turkey Stores Sales, LLC (collectively "Jennie-O"), against FMI, a California bulk food distributor. Jennie-O filed the action in Mower County District Court. FMI then removed the case to federal court based on diversity of citizenship.

---

[1] FMI originally based its motion on Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction) and Fed. R. Civ. P. 12(b)(5) (insufficient service of process). FMI later withdrew the portion of its motion based on Rule 12(b)(5). *FMI's Memo. In Support of Motion To Dismiss*, p. 1, n.1.

FMI is a California corporation with its principal and only place of business in Benicia, California. *Declaration of Thomas S. LaMonica*, ¶ 1. It has no employees in Minnesota, nor have its employees ever visited the state. *Id.*, ¶ 4. Jennie-O Turkey Store, Inc. is a Minnesota corporation and a wholly-owned subsidiary of Hormel. *Complaint*, ¶ 2; *Affidavit of Ryan A. Olson*, Ex. A. Jennie-O Turkey Store Sales, LLC is a Delaware corporation based in Austin, Minnesota. *Complaint*, ¶ 2.

Emkay Corporation ("Emkay"), a Dublin California food broker and Hormel's agent, solicited FMI in California to purchase Jennie-O's turkey products. *First LaMonica Decl.*, ¶ 11. FMI subsequently submitted 53 orders for Jennie-O turkey burgers and other food products directly to Emkay in California between July 2004 and February 2006. *Id.*, ¶¶ 12-13; *Declaration of Betty N. Wright*, ¶ 2. These food purchases totaled over $1.2 million. *Id.*

FMI paid Jennie-O by issuing checks or authorizing wire transfers to Jennie-O at Jennie-O's post office box in Pasadena, California. *Second Declaration of Thomas LaMonica*, ¶ 6. Jennie-O cashed the checks in California. *Declaration of Matt DuBois*, ¶ 4.

Jennie-O manufactured the food FMI purchased through Emkay in Minnesota. *Wright Decl.*, ¶ 5. Jennie-O provided FMI with Terms and Conditions of Sale for each order stating, "**Governing Law.** All rights and obligations of Seller and Buyer shall be governed by the laws of the State of Minnesota without regard to conflict of law provisions." *Id.*, Ex. A (emphasis in original).

Immediately after purchasing Jennie-O's products, FMI resold them to its customers, who retrieved the food at a Minnesota distribution center or elsewhere. *Second LaMonica Decl.*, ¶¶ 11-12. *See also Wright Decl.*, ¶ 5 (FMI "arranged to pick up the goods in Minnesota").

Only two of these turkey transactions give rise to the instant lawsuit. In February 2006, FMI placed two orders for Jennie-O turkey burgers with Emkay in California. *Complaint,* ¶ 6; *First LaMonica Decl.*., ¶¶ 13-16 and Ex. A. Jennie-O shipped the turkey burgers to a Philadelphia, Pennsylvania warehouse where FMI's customer picked them up. *Id.* ¶¶ 14-16. Jennie-O's lawsuit alleges that FMI is wrongfully withholding payment for these turkey burgers.

Other FMI orders of Jennie-O products were picked up by FMI customers at a Minnesota warehouse. *Wright Decl.*, ¶ 2.; *Second LaMonica Decl.*, ¶¶ 12-15. These orders, comprising 32 out of FMI's 53 orders of Jennie-O products, are not the subject of Jennie-O's Complaint against FMI. *Id.*

**ANALYSIS**

FMI's motion to dismiss is predicated on its assertion that it lacks sufficient contact with Minnesota to allow this Court's exercise of personal jurisdiction over it. It argues that the transactions at issue took place, from start to finish, in California. Jennie-O counters that the food products FMI purchased were manufactured by Jennie-O in Minnesota and that FMI arranged to have its customers pick up some of the orders in Minnesota, providing evidence of sufficient minimum contacts with the state to establish a prima facie case of personal jurisdiction. Jennie-O also argues that it is entitled to conduct jurisdictional discovery should the Court determine that evidence of minimum contacts is lacking.

    **A.**    **Standard of Review**

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citations omitted). When determining whether the plaintiff has made such a prima facie showing, "the court must view the evidence in the light

most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Id.* However, while the Court must view the evidence in a light most favorable to the plaintiff, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 653 (8th Cir. 1982).

### B. Personal Jurisdiction

#### 1. Legal Framework

The Court's exercise of personal jurisdiction must satisfy both state and constitutional requirements. *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 42 (8th Cir.1988). First, the applicable state long-arm statute, here Minnesota § 543.19, must be met. Second, personal jurisdiction must comply with the requirements of due process. Because Minnesota's long-arm statute has been construed to extend jurisdiction to the maximum limit consistent with due process, "the inquiry collapses into a single question of whether the exercise of personal jurisdiction comports with due process." *Bible & Gospel Trust v. Wyman*, 354 F. Supp.2d 1025, 1027 (D. Minn. 2005) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410-411 (Minn.1992)).

When examining whether minimal contacts exist, the overarching inquiry is whether the defendant has purposefully availed itself of the benefits or privileges of the law in the forum state. When the defendant's relationship with the forum state results from random or attenuated contacts, no such purposeful availment has occurred. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To determine whether a defendant's contacts support the exercise of personal jurisdiction, a court considers five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the

quantity of the defendant's contacts with the forum state; (3) the relation of the plaintiff's cause of action to the defendant's contacts; (4) the interest of the forum state in providing relief for its residents; and (5) the convenience to the parties. *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 694 (8th Cir. 2003). Of the five factors, the first three are accorded greater weight and the remaining two less weight. *Id.*

The Supreme Court has elaborated on factor three of the five-part test regarding the relationship between the cause of action and the defendant's contacts, distinguishing between specific and general jurisdiction. When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (citation omitted). If the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 415 n.9. A defendant may be subject to the forum state's exercise of general personal jurisdiction if its contacts with the state are "continuous and systematic." *Id.* at 414.[2]

   2.   *Specific Personal Jurisdiction*

Jennie-O does not make a prima facie showing of specific personal jurisdiction. Its Complaint is based on two transactions with FMI occurring in February 2006. With respect to these two transactions the facts are undisputed that FMI placed its orders for Jennie-O products through Emkay in California. *First LaMonica Decl*, ¶ 13 and Ex. A. FMI then immediately resold the food products to a customer who

---

[2] Jennie-O does not specify whether specific or general jurisdiction, or both, apply here. The Court, therefore, examines both.

picked them up at a Philadelphia, Pennsylvania warehouse. *Id.*, ¶¶ 14-16. Thus, with respect to the sales transactions giving rise to the lawsuit, no Minnesota contact occurred at all. FMI did not contract directly with Jennie-O, never called, visited, or corresponded with Jennie-O in Minnesota, and did not even arrange to have its customers pick up any Jennie-O product in Minnesota.

The sole Minnesota connection to the allegations stated in Jennie-O's Complaint is Jennie-O's manufacture of the turkey products in Minnesota. It is well established that the plaintiff's manufacture of goods in a forum state is insufficient to establish the minimum contacts required for the exercise of personal jurisdiction. *Mountaire Feeds, Inc.*, 677 F.2d at 655-656 (holding that manufacture, packaging, and shipping of product within forum state insufficient to establish personal jurisdiction even where parties exchanged telephone calls, correspondence, and used forum banks); *Scullin Steel Co. v. Nat'l Railway Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) (holding that manufacture and delivery of goods, along with payment in forum state insufficient to establish personal jurisdiction); *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F. Supp. 902, 903 (D. Minn. 1971) (holding that manufacture of product and payment of purchase price in Minnesota insufficient to establish jurisdiction). Jennie-O, therefore, does not set forth sufficient facts to make a prima facie showing of specific personal jurisdiction. *See Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (finding specific jurisdiction lacking where cause of action entirely unrelated to defendant's activities in forum state).

    *3.    General Personal Jurisdiction*

Neither is the Court's exercise of general personal jurisdiction appropriate here. Jennie-O argues that a prima facie case of general jurisdiction is established because FMI "arranged to pick up" Jennie-O products from a Minnesota warehouse 32 times over the course of their relationship. *Wright Decl.*, ¶ 5.

6

Jennie-O also points to its Terms and Conditions of Sale which include a Minnesota choice of law provision. *Id.*, ¶ 4 and Ex. A.[3]

Neither of these factors is sufficient, either alone or together, to constitute a prima facie showing of continuous and systematic contacts supporting the exercise of general personal jurisdiction. Although Jennie-O states that FMI arranged to have its customers pick up products in Minnesota, FMI offered undisputed evidence that its customers, not FMI, chose the Minnesota delivery site. *Second LaMonica Decl.*, ¶¶ 12-15.[4] More importantly, the provision for delivery of a product within a forum state and a Minnesota choice of law provision are "secondary factors" in the personal jurisdiction analysis. As such, they cannot, by themselves, provide the minimum contacts required to satisfy due process. *Scullin Steel Co.*, 676 F.2d at 314 (holding that "provision for delivery within the forum state" is a secondary or ancillary factor which cannot alone establish personal jurisdiction);[5] *Digi-Tel Holdings, Inc.*, 89 F.3d at 523

---

[3] FMI denies that it received these Terms and Conditions of Sale. *Second LaMonica Decl.*, ¶ 4. However, for the purposes of this motion, the Court views the evidence in the light most favorable to Jennie-O and, therefore, assumes as true Jennie-O's assertion that it provided them to FMI.

[4] Jennie-O submitted the Affidavit of Scott C. Seibel in an attempt to strengthen its argument that FMI was involved in choosing the Minnesota delivery site. Seibel, a sales manager for Diamond Crystal Brands, had discussions with FMI regarding its distribution activities. *Seibel Aff.*, ¶ 2. Seibel states that FMI told him that it had done business in the past with a Minneapolis, Minnesota distribution center. *Id.*, ¶ 3. This statement does not address the relationship between the parties at issue here, and, even if it did, does not provide sufficient information upon which to predicate the exercise of general personal jurisdiction.

[5] *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365 (8th Cir. 1969), is inapposite. In that case, the court predicated personal jurisdiction, in part, upon delivery of products to Minnesota. However, as later decisions have recognized, *Electro-Craft* relied upon a distinction between nonresident sellers and nonresident buyers, the idea being that nonresident sellers are more amenable to personal jurisdiction in Minnesota in exchange for the right to compete for business in the Minnesota market. *Id.* at 368. Regardless of the continued viability of this distinction, *see Scullin Steel*, 676 F.2d at 313-314, it does not apply here. FMI is a nonresident buyer of goods from a forum state seller, the opposite of the situation in *Electro-Craft*.

(holding that "although a choice of law provision may be considered for jurisdictional purposes ... it is insufficient in itself to confer jurisdiction"). Jennie-O, therefore, cannot make a prima facie showing of general jurisdiction by its reliance on these secondary factors alone.[6]

Jennie-O has not proffered any evidence of a more substantial Minnesota connection, much less a "continuous and systematic" one. All FMI's orders were placed in California through Emkay, FMI paid Jennie-O at its California post office box, and Jennie-O cashed FMI's payment checks in California. FMI never visited Minnesota or even called or corresponded with Jennie-O in Minnesota. Moreover, it was Emkay that reached out and solicited FMI's business in California in the first instance, a fitting beginning for what was to be a business relationship occurring primarily, and almost solely, in California. *See Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987) (finding evidence of personal jurisdiction lacking where, inter alia, the defendant did not seek actively solicit a business relationship with the plaintiff). Under these circumstances, the Court finds insufficient evidence of minimum contacts with Minnesota necessary to establish a prima facie case of general personal jurisdiction.

### C. Jurisdictional Discovery

Jennie-O requests that it be allowed to conduct jurisdictional discovery if the Court finds personal jurisdiction doubtful. Jennie-O has not, however, identified any factual areas in need of supplementation which would change the outcome recommended above. The Court, therefore, finds that no need for

---

[6]The Terms and Conditions of Sale also contained a provision stating, "Unless otherwise provided, shipment shall be F.O.B. destination." *Wright Decl.*, Ex. A. This does not help Jennie-O, as a Minnesota delivery site was not chosen as part of the F.O.B. term. *Cf. Bell Paper Box, Inc.*, 22 F.3d at 819-820 (holding that "F.O.B. Sioux Falls" shipping designation was one of several factors supporting exercise of specific jurisdiction in South Dakota).

jurisdictional discovery has been demonstrated. *See Johnson v. Woodcock*, 444 F.3d 953, 957 (8th Cir. 2006) (affirming denial of jurisdictional discovery request where it was not shown that discovery would "create evidence of sufficient contacts to affect the outcome of this issue").

### III.   CONCLUSION

FMI's only contacts with Minnesota were its customers' retrieval of some of FMI's orders for Jennie-O's food products (but not the orders at issue in Jennie-O's Complaint) at a Minnesota warehouse and a Minnesota choice of law provision in Jennie-O's Terms and Conditions of Sale. These facts are insufficient to create a prima facie case of either specific or general personal jurisdiction. Moreover, Jennie-O has not alleged facts sufficient to entitle it to jurisdictional discovery.

### IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

A.   Defendant Food Movers International, Inc.'s Motion to Dismiss Plaintiffs' Complaint (Doc. No. 3) be GRANTED.

B.   This action be DISMISSED WITHOUT PREJUDICE.

Dated this 9th day of August, 2007.                    s/Jeanne J. Graham

JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by August 28, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure

to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.